RUEL v. WASHBURNE.

1. BILLS AND NOTES—CONSIDERATION.

Where defendant had agreed to purchase a farm from plain-
tiffs giving them back a mortgage for $13,000 with in-
terest at 5¼ per cent., but the plan was changed and
defendant took the farm subject to a mortgage for $10,000
drawing 4 per cent. and executed notes for the $3,000,
and also for the difference in interest between the 4 per
cent. which plaintiffs were obligated to pay and the 5¼
per cent. which defendant had agreed to pay, there was
a valid consideration for the notes.

2. SAME—DURESS.

If the negotiations accompanying such change may be said
to amount to duress, it was immaterial, since there was
no loss or injury to defendant.

3. SAME—USURY—INTEREST.

Neither did the change in interest amount to usury, the
notes covering the difference in interest between 4 per
cent. and 5¼ per cent. on $10,000, and not on $3,000 as
computed by defendant.

4. USURY—BORROWED MONEY—INTEREST RATE.

It is not a violation of the statute against usury to borrow
money at 4 per cent. and loan it at 5¼ per cent.

Error to Washtenaw; Sample, J. Submitted Janu-
ary 7, 1919. (Docket No. 6.) Decided April 3, 1919.

Assumpsit by James H. Ruel and another against
Benjamin F. Washburne on certain promissory notes.
Judgment for plaintiffs on a directed verdict. De-
fendant brings error. Affirmed.

*Price & Whiting* and *John Kalmbach,* for appellant.

*Cavanaugh & Burke,* for appellees.

BIRD, C. J. After some preliminary negotiations
plaintiffs agreed to sell to defendant their 500-acre

farm in Washtenaw county for the sum of $20,000, upon the following terms: $7,000 to be paid down and a mortgage to be given thereon for $13,000 with interest at the rate of 5¼ per cent. Also an abstract showing clear title. After these terms were agreed to by the parties, defendant paid several installments on the cash payment, aggregating $3,000, and took possession of the farm. Subsequently, when they met in a Jackson hotel to close the deal, plaintiffs advised defendant that there was a mortgage on the premises of $10,000, bearing 4 per cent. interest, and instead of presenting him with a deed and mortgage for $13,-000, they presented a deed conveying the premises to him, subject to the $10,000 mortgage, and obligating him to make payment thereof; a mortgage for $3,000, and six promissory notes for $125 each, the notes to represent the difference between the four per cent. interest on the $10,000 and the 5¼ per cent. which he had agreed to pay, one note falling due each year thereafter. Defendant hesitated about executing the papers on account of the change in plan, but upon talking it over and having it explained to him that it was the same proposition in another form he consented to, and did, execute the papers after the last two notes had been indorsed, in accordance with his suggestion, that if he paid the $10,000 mortgage before they became due they should be canceled.

Defendant never made any payment on the notes and this suit in assumpsit was begun to enforce payment thereof. The defense of the lack of consideration, duress and usury was made in the trial court. There being no material disagreement on the facts, both parties requested a directed verdict. The trial court took the plaintiffs' view of it and directed a verdict for them in the sum of $930.78. Defendant, on review in this court, discusses the same questions.

1. *Consideration.* Counsels' argument is that the

notes are without consideration because no benefit accrued to defendant nor was any disadvantage sustained by plaintiffs. In short, the contention of counsel is that plaintiffs having failed to close the deal in accordance with the original agreement, and defendant having consented to take title to the farm, subject to the existing mortgage, he is legally obligated to pay the four per cent. the mortgage calls for, and no more.

The consideration for the notes was defendant's agreement to pay $20,000 for the farm. True, the original agreement was that he should give a $13,000 mortgage, but this was subsequently altered by agreement of the parties. The change did not affect the agreed consideration, but simply altered the manner of evidencing the unpaid portion of it. The substitute agreement called for the same consideration the original agreement did, no more and no less, and did not bind defendant to pay anything in addition to what he had already obligated himself to pay. But counsel say that when plaintiffs refused to close the deal in accordance with the original plan, and defendant purchased the farm subject to the mortgage, he was liable only for the rate of interest which the mortgage bore. This, undoubtedly, would be true if defendant had not agreed to the substitute plan. Plaintiffs had borrowed $10,000 for a long term at an advantageous rate of interest. That advantageous rate belonged to them. Just when and how defendant became entitled to the benefit of it is not shown. They did not agree to transfer it to him, nor did they. Therefore, we must conclude that he was not entitled to it. It is quite likely defendant might have insisted upon having the papers executed in accordance with the original agreement, but he did not, and admits that he agreed to the substitute plan. There can be no escape from the conclusion that if defendant agreed to give $20,000 for

the farm, there was a valuable consideration for the notes.

2. *Duress.* In speaking of the combination of circumstances which produced the duress, counsel say in part:

"He was inexperienced and did not know his rights. They had $3,000 of his money. It was late at night in a strange place and there was no one to advise him, and all that Ruel would say to him was 'What are you going to do about it?' Ruel knew Washburne's predicament and took advantage of it. The whole thing was timed and planned in such a way to give Washburne no chance to consider or take advice."

We find nothing in the negotiations at the hotel which would deprive a normal man of the free exercise of his will. It is true, as counsel say, defendant had paid $3,000 on the deal, but he had possession of the farm and was in a more advantageous position to enforce his demands than were plaintiffs. He had agreed before going to the hotel to pay $7,000 in cash and obligate himself to pay $13,000 more, with interest at the rate of 5¼ per cent., and this is precisely what he did before leaving the hotel. If there were any duress defendant did not suffer by it. A duress which worked neither loss nor injury to defendant would not seem to be very material to this controversy.

3. *Usury.* Upon this subject counsel observe that:

"The scheme by which the plaintiffs sought to evade the statute of this State against usury is a very plausible and ingenious one and worthy of the consideration of every one who wishes to practice usury. The value of their equity in the farm was $10,000. For this they received $7,000 in cash, a mortgage for the balance of their equity of $3,000, carrying 5¼ per cent. interest per annum, and also notes representing 1¼ per cent. per annum on $10,000 which they owed, and which Washburne assumed, making in all $282.50 per annum which they were to receive for the use of

$3,000, being practically 9½ per cent. for the use of their money."

The fallacy of this argument lies in the assumption that the reservation of interest was upon the basis of a $3,000 indebtedness rather than one of $13,000. Plaintiffs borrowed the $10,000 and gave their notes for it, and are still obligated to pay them. To assume that plaintiffs could not borrow money at 4 per cent. and loan it at 5¼ per cent. without violating the statute against usury, would be assuming something which does not exist. We think there is no merit in any one of these contentions.

The judgment of the trial court will be affirmed.

MOORE, STEERE, BROOKE, FELLOWS, STONE, and KUHN, JJ., concurred. OSTRANDER, J., did not sit.